FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 27 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

HOWARD FREIRE, DIN #14-A-1410,

                    Plaintiff,

        -against-

P.O. JOHN ZAMOT, P.O. ANTHONY JONES,
DETECTIVE JOHN GUITIERREZ, P.O. EDGAR
GOMEZ, SERGEANT SUI LAM, EMT FELIX
MOLDOVAN, EMT WENDY TAPIA, LUIGI
DINOFRIO, GEORGE AGRIANTONIS, AND
THE CITY OF NEW YORK; INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITY,

                    Defendants.

-------------------------------------------------------------------x

**MEMORANDUM & ORDER**

14-CV-304 (SLT) (LB)

**TOWNES, United States District Judge:**

Plaintiff Howard Freire brings this *pro se* action alleging civil rights violations for

deliberate indifference to serious medical needs, pursuant to 42 U.S.C. § 1983, against

Defendants the City of New York ("the City"), New York City Police Officers John Zamot,

Edgar Gomez, Anthony Jones, and Luigi Dinofrio, New York City Police Detective John

Guitierrez, New York City Police Sergeant Sui Lam, EMTs Felix Moldovan and Wendy Tapia,

and George Agriantonis. Currently before the Court is Defendant George Agriantonis's

("Defendant" or "Dr. Agriantonis") motion to dismiss Plaintiff's claims under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 71-2, 71-5.) For the reasons set

forth below, Defendant's motion is granted.

## BACKGROUND

**A.     Facts**

The following facts, assumed to be true for the purpose of deciding this motion, are

drawn from the Second Amended Complaint. ("Second Am. Compl.," ECF No. 47.) On

1

January 19, 2012, at approximately 1 p.m., Plaintiff was walking on 46th Avenue near Junction Boulevard when he was approached by three men dressed in "urban civilian clothing (hooded sweatshirts, jeans and caps)." (*Id.* at § IV., ¶¶ 1, 3.) These men, who did not identify themselves as police officers, approached Plaintiff in a "threatening manner, chased after him, and shot him in the back." (*Id.* at § IV., ¶¶ 2, 3.) An ambulance arrived shortly thereafter, but police officers directed the paramedics to wait before loading Plaintiff to allow police "to carry out a Show-Up identification" at the scene. (*Id.* at ¶ 5.) The waiting period lasted twenty to thirty minutes, during which time Plaintiff was lying naked on the sidewalk with a gunshot wound to his back. (*Id.*)

Plaintiff was at Elmhurst Hospital from January 19, 2012, to January 25, 2012. (*Id.* at ¶ 6.) After receiving surgery at the hospital, he was released into police custody. (*Id.* at § IV., ¶¶ 7 and A.) Dr. Agriantonis "allowed the premature release of plaintiff" and "should have also known that plaintiff would not receive prescribed medications while in the custody of the NYPD." (*Id.* at ¶ 7.) Plaintiff does not allege why his release was "premature," or how or why Dr. Agriantonis "should have known" that Plaintiff would not receive his medications in custody.

Plaintiff's family was not permitted to bring him clothing so that over the next two days, and in "inclement weather," Plaintiff wore "only thin hospital pajamas and socks" as he was shuttled between the courthouse, the hospital, and the 110th Precinct. (*Id.* at ¶¶ 6, 7.) "During this time in police custody, plaintiff was denied medications that had been dispensed at the hospital pharmacy for him. On January 26, 2012, the 110th precinct area supervisor, Luigi Dinofrio held the medications in his hand while taunting plaintiff, yet he did not allow officers to give plaintiff said medications." (*Id.* at ¶ 8.) After twelve hours without medication, Plaintiff

had to be returned to Elmhurst Hospital "with severe abdominal and back pain," and was

subsequently released back to police custody. (*Id.* at ¶ 9.) On January 27, 2012, at

approximately 11:23 a.m., Plaintiff was admitted to Jamaica Hospital for complications resulting

from "the deliberate outrageous conditions under which he was held in custody of the New York

City Police Department since his release from the hospital." (*Id.* at ¶ 10.)

The rest of Plaintiff's "Statement of Facts" are directed at the City. He alleges that the

City "allow[s] use of excessive force by its police force, and disregard[s] the obvious risk of its

failure to develop an adequate training program" regarding "arrest and apprehension of a fleeing

suspect." (*Id.* at ¶ 11.) He also alleges that at the time, the City

> had a custom or pattern of persistent or wide spread discriminatory targeting of
> minorities in certain precincts and neighborhoods. These customs, as well as the
> inadequate grossly deficient and negligent training programs, constitute the
> moving force behind the outrageous and reckless conduct of these police officers,
> as well as deliberate indifference.

(*Id.* at ¶¶ 12-13.)

> Plaintiff claims the following resulting injuries:
>
> Gunshot wound to left lower back, six distal Jejunum perforations, sigmoid colon
> injury, paracolic gutter bleeding, sigmoid displacement, associated mesenteric
> injury, traversed guadratus lumborum muscle and lower lumbar, bleeding from
> injured retroperitoned muscules [*sic*], continued irreparable pain and muscle
> spasms, as well as deficient lower back function.

(*Id.* at § IV., ¶ A.) He further alleges that "Defendant's [*sic*] deliberate indifference to plaintiff's

medical needs caused serious physical and emotional distress." (*Id.*)

Plaintiff seeks compensatory damages in the amount of $20 million and punitive damages

in the amount of $10 million. (*Id.* at § V.) He also seeks legal costs and any other relief that

this Court deems "just, proper, and equitable." (*Id.*)

## B.    Procedural History

In January 2014, Plaintiff, while incarcerated, commenced this *pro se* action on a form "Civil Rights Complaint" pursuant to "42 U.S.C. § 1983," with handwritten allegations against New York City Police Officers Zamot and John Does 1 and 2, Detective John Doe, John Doe Precinct Supervisor, R. Kelly Commissioner, individually and in their official capacity. (ECF No. 1.) This Court's February 5, 2014 Memorandum and Order, *inter alia*, dismissed Plaintiff's claims against New York City Police Commissioner Raymond Kelly. Plaintiff and the City subsequently identified the specific New York City law enforcement officials involved. (ECF Nos. 6 and 8.)

On June 2, 2014, this Court granted the City's motion to stay the action *sua sponte* pending an investigation by the New York City Civilian Complaint Review Board ("CCRB"). (ECF No. 19.) Plaintiff did not oppose the stay and requested leave to file motions seeking to amend his complaint and seeking appointment of counsel. (ECF No. 26.) United States Magistrate Judge Lois Bloom ("Judge Bloom") granted Plaintiff leave to amend his complaint. (Order, ECF No. 27.) Judge Bloom also notified Plaintiff that: there is no right to counsel in a civil case; in determining whether to request a volunteer attorney for a civil case the Court must first consider whether the plaintiff can make a "threshold showing of some likelihood of merit[;]" and "any request for counsel should address this threshold issue." (*Id.*) Plaintiff did not subsequently move to seek appointment of counsel.

On July 25, 2014, Plaintiff amended his complaint by naming the specific New York City law enforcement officers involved except for the "precinct supervisor." (ECF No. 30.) On August 19, 2014, the City informed the Court that the CCRB investigation had concluded. (ECF No. 33.) On December 3, 2014, the Court deemed the amended complaint as having identified

4

the "precinct supervisor" at issue. (ECF No. 42.) On December 26, 2014, Plaintiff amended his complaint again by adding EMTs Felix Moldovan and Wendy Tapia, and Dr. Agriantonis as defendants, as well as adding allegations against Dr. Agriantonis. (ECF No. 47.) All Defendants except for the EMTs and Dr. Agriantonis answered the Second Amended Complaint. (ECF No. 50.)

Dr. Agriantonis has moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to state a claim against him. (Memo. of Law in Support of Defendant George Agriantonis, M.D.'s Motion to Dismiss the Complaint Pursuant to F.R.C.P. Rule 12(b)(6) ("Def. Memo. of Law") ¶ I; ECF No. 71-2, 71-5.) Although Plaintiff has not alleged any state law claims in this litigation against any Defendant, Dr. Agriantonis argues that this Court should not exercise jurisdiction over any pendant state claims and that a claim for negligence would be time-barred. (*Id.* at ¶¶ II, III.) Magistrate Judge Lois Bloom stayed discovery as to Dr. Agriantonis pending a decision on this motion. (ECF No. 70.) Discovery as to the remaining Defendants proceeded (*id.*), and was completed by November 5, 2015. (ECF No. 74.)

Plaintiff opposes the motion to dismiss with an Affidavit ("Plaintiff's Opposition Affidavit") and four Exhibits. (ECF No. 71-3.) Exhibit One is the January 25, 2012 "Discharge/Transfer Summary" from Elmhurst Hospital; Exhibits Two and Three are the "Medical Chart" from Elmhurst Hospital Center Emergency Services for "DOS: 1/26/2012 01.35" and "DOS: 1/26/2012 15:07," respectively; and Exhibit Four is Plaintiff's chart from Jamaica Hospital Medical Center for "Adm: 1/27/2012, D/C: 1/26/2012." (ECF No. 71-3.) These documents were not attached to any of Plaintiff's Complaints. Moreover, Plaintiff's Opposition Affidavit contains facts not alleged in the Second Amended Complaint. Defendant

has filed a reply affidavit. (Reply in Support of Defendant's Motion to Dismiss ("Def. Reply");

ECF No. 71-5.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint where the

plaintiff has failed to state a claim upon which relief can be granted. In considering a Rule

12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56

(2007). Indeed, a plaintiff "need only satisfy Rule 8(a)'s standard of a 'short and plain statement

of the claim showing that [he] is entitled to relief.'" *Boykin v. Keycorp*, 521 F.3d 202, 213 (2d

Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). While Federal Rule of Civil Procedure 8 "marks a

notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ...

it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face." *Twombly* at 570. A claim will have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint is properly dismissed where "the

allegations in a complaint, however true, could not raise a claim of entitlement to relief ...."

*Twombly*, 550 U.S. at 558.

Against this backdrop, "when the plaintiff proceeds *pro se*, ... a court is obliged to

construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin*

*v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citation omitted); *Haines v. Kerner,* 404 U.S.

519, 520 (1972) (A *pro se* complaint "however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers ....") Moreover, the Court is generally

limited to the "facts stated in the complaint or documents attached to the complaint as exhibits or

incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.

2005). "The Court may, however, consider affidavits and other materials outside of a *pro se*

plaintiff's complaint when deciding a motion to dismiss, to the extent these materials are

consistent with the allegations in the complaint." *Cornado v. City of New York, et al.*, No.

11CV5188, 2014 U.S. Dist. LEXIS 134722, at *5 (S.D.N.Y. Sept. 24, 2014); *see also Gill v.

Mooney*, 824 F.2d 192, 195 (2d Cir. 1987). Therefore, the Court will consider Plaintiff's

Opposition Affidavit and the attached medical records to the extent that they are consistent with

his allegations in the Second Amended Complaint.

## DISCUSSION

42 U.S.C. § 1983 "provides 'a method for vindicating federal rights elsewhere conferred,'

including under the Constitution." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To establish § 1983 liability, "[t]he conduct

at issue must have been committed by a person acting under color of state law and must have

deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the

United States." *Cornejo*, 592 F.3d at 127 (internal quotation marks and citation omitted).

Alleging deliberate indifference to serious medical needs "states a cause of action under § 1983."

*Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

Defendant moves to dismiss Plaintiff's deliberate indifference claim by relying

principally on cases concerning an inmate's rights under the Eighth Amendment. But since

Plaintiff was a pretrial detainee, not a prison inmate, when the events at issue occurred, his

§ 1983 claim is properly construed under the Due Process Clause of the Fourteenth Amendment.

As the Second Circuit explained in *Caiozza v. Koreman*:

> In the case of a person being held prior to trial, however, "the cruel and unusual punishment proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being punished," *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *see also Weyant*, 101 F.3d at 856. [A] person detained prior to conviction receives protection against mistreatment at the hands of prison officials under ... the *Due Process Clause of the Fourteenth Amendment* if held in state custody.

581 F.3d 63, 69 (2d Cir. 2009) (emphasis in original). However, the legal standard for deliberate

indifference to serious medical needs is the same whether it arises under the Eighth or the

Fourteenth Amendment. *Id.* at 72. Consequently, Eighth Amendment cases can be used to

analyze such claims under the Fourteenth Amendment. *Id.*

"The deliberate indifference standard embodies both an objective and a subjective

prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "First, as to the objective prong,

the medical condition for which the plaintiff alleges he was denied treatment must be

'sufficiently serious'" such that "it involves some urgency, risk of degeneration or death, or

extreme pain." *Veloz v. New York*, 35 F.Supp.2d 305, 311 (S.D.N.Y. 1999) (citing and quoting

*Hathaway*, 37 F.3d at 66 (2d Cir. 1994)). "Determining whether a deprivation is an objectively

serious deprivation entails" looking at: (1) "whether the prisoner was actually deprived of

adequate medical care;" and (2) "whether the inadequacy in medical care is sufficiently serious,"

meaning "how the offending conduct is inadequate and what harm, if any, the inadequacy has

caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir.

2006). "Thus, although we sometimes speak of a 'serious medical condition' as the basis for an

Eighth Amendment claim, such a condition is only one factor in determining whether a

deprivation of adequate medical care is sufficiently grave to establish constitutional liability."
*Id.* at 280.

"Second, as to the subjective prong, the plaintiff must allege that the charged official acted with a sufficiently culpable state of mind." *Veloz*, 35 F.Supp.2d at 311 (citing *Hathaway*, 37 F.3d at 66 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991))). "The sufficiently culpable state of mind ... is one of deliberate indifference to an inmate's health or safety, .... equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. 825, 834, 835 (1994) (internal quotation marks and citation omitted); *see also Salahuddin*, 467 F.3d at 281 ("must be aware that his conduct creates a risk"). Therefore, a defendant cannot be found liable for deliberate indifference "unless [he is] ... both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... draw[s] the inference." *Farmer*, 511 U.S. at 837; *see also Sonds v. St. Barnabas Hosp.*, 151 F.Supp.2d 303, 311 (S.D.N.Y. 2001).

"In short, in order to avoid dismissal, a plaintiff must allege conduct that shocks the conscience." *Veloz*, 35 F.Supp.2d at 311 (internal quotation marks and citation omitted). "[I]nadvertent failure to provide adequate medical care" may not constitute an Eighth Amendment violation. *Estelle*, 429 U.S. at 105-06. Negligence in diagnosis or treatment will not constitute a valid claim of medical mistreatment under the Eighth Amendment. *Id.* at 106; *see also Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (citations omitted) (holding that "Hemmings' claims of inadequate treatment ... by Dr. Vargas, are at most claims of negligence, which fall short of the deliberate indifference to serious medical needs required to establish an Eighth Amendment violation"). Thus, allegations amounting to medical "malpractice" will not suffice as constitutional violations under a § 1983 deliberate indifference claim. *Estelle*, 429 U.S. at 106 n.14.

9

The Court will address the subjective prong first because it is dispositive here.

**A.      Plaintiff Has Failed to State a Claim that Dr. Agriantonis
was Deliberately Indifferent to Plaintiff's Medical Needs**

Plaintiff's claim is based on two conclusory allegations, that Dr. Agriantonis "allowed the

premature release of plaintiff," and that he "should have also known that plaintiff would not

receive prescribed medications while in the custody of the NYPD." (Second Am. Compl. § IV.,

¶ 7.) Even with the liberal pleading standards afforded a *pro se* complaint, Plaintiff has failed to

allege "deliberate indifference" by Dr. Agriantonis. There are no allegations from which one can

draw a reasonable inference that Defendant had a sufficiently culpable state of mind.

Plaintiff is not objecting to the medical treatment that he received from Dr. Agriantonis.

He alleges no objection to any diagnosis or care that he received by Defendant at Elmhurst

Hospital. Moreover, measures were taken to facilitate Plaintiff's care even after he was first

discharged from the hospital. Plaintiff left Elmhurst Hospital with his prescribed medicines.

(Second Am. Compl. § IV., ¶ 8.) And Elmhurst Hospital scheduled a follow-up appointment to

see Plaintiff five days after he was discharged. (Pl. Opp. Aff. Ex. 1 at D755.) Therefore,

Plaintiff's allegations indicate that he was given reasonable medical care, undermining his claim

of "deliberate indifference" by Dr. Agriantonis.

Against this backdrop, Plaintiff makes the conclusory allegation that Dr. Agriantonis

discharged him prematurely without any hint of why Plaintiff believes that his discharge was

premature. (Second Am. Compl. § IV., ¶ 7.) Plaintiff's Opposition Affidavit appears to argue

that he was not well enough to be discharged. For instance, he states that a nurse told him "that I

had to go" even though he "voiced" complaints. (Pl. Opp. Aff. ¶ 6.) And that Plaintiff "could

not walk without pain...." (*Id.* at ¶ 7.) Even if Plaintiff had alleged that he was too sick to be

discharged by Dr. Agriantonis on January 25, 2012, such allegations would rise at most to the

level of negligence or malpractice, but neither is actionable as a § 1983 claim. *Estelle v. Gamble*, 429 U.S. 97, 106 and n.14 (1976); *Hemmings*, 134 F.3d at 108; *Salahuddin*, 467 F.3d at 281. Allegations amounting to disagreement over the form or timing of treatments are not actionable. *Estelle*, 429 U.S. at 107 (dismissed deliberate indifference claim against physician, finding that "at most," the plaintiff had alleged "medical malpractice, and as such the proper forum is the state court," where the plaintiff alleged essentially that "more should have been done" for his back); *see also Villar v. Ramos*, No. 13 Cv. 8422, 2015 U.S. Dist. LEXIS 71381, at *8 (S.D.N.Y. Jun. 5, 2015) (dismissing *pro se* plaintiff's deliberate indifference claim where allegations included that the plaintiff's colon cancer was not timely treated with chemotherapy). Plaintiff has provided no factual allegations that Dr. Agriantonis's decision to discharge him from Elmhurst Hospital on January 25, 2012, after Plaintiff had received surgery and spent five days in the hospital, deviated from reasonable medical practice, much less that Dr. Agriantonis acted with a culpable state of mind in making that decision.

Plaintiff also makes the conclusory allegation that Dr. Agriantonis "should have also known that plaintiff would not receive prescribed medications while in the custody of the NYPD." (Second Am. Compl. § IV., ¶ 7.) Plaintiff's opposition submission sheds no light on this conclusory allegation. Nonetheless, that Dr. Agriantonis should have known of the alleged risk is not enough to allege that he had a sufficiently culpable state of mind. As the Supreme Court held in *Farmer v. Brennan*, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." 511 U.S. at 838. In sum, one cannot draw a reasonable inference from the allegations that Dr. Agriantonis had actual or constructive knowledge of the alleged risk, and that he recklessly disregarded it by choosing to ignore it.

*Farmer*, 511 U.S. at 835, 837; *Sonds*, 151 F.Supp.2d at 311; *Veloz*, 35 F. Supp.2d at 312

(dismissed *pro se* plaintiff's deliberate indifference claim in part because there was no allegation

that "Dr. Organ was aware of a serious risk to Veloz's health that he chose to ignore .... Here,

Veloz does not allege that Dr. Organ was in any way responsible for either rescheduling

[surgery] or that the rescheduling caused serious medical needs to go untreated").

Nor can one draw even an inference from the allegations that Dr. Agriantonis took on the

duty of ensuring that Plaintiff was given his medications after he was released from Elmhurst

Hospital on January 25, 2012. Rather, "on the facts alleged, a factfinder would be compelled to

conclude that the doctor[] here acted as doctors ordinarily do--prescribing treatment and leaving

it to the patient, or the patient's guardians, to ensure that the course of treatment be carried out."

*Mahone v. City of New York*, No. 13Civ8014, 2014 U.S. Dist. LEXIS 50754, at *13 (S.D.N.Y.

Apr. 11, 2014) (ruling that the plaintiff failed to "allege facts that would permit the conclusion

that the doctors here took on the responsibility of assuring that prison personnel facilitated

compliance with the course of treatment they had recommended," *id.* at *11, where the plaintiff

alleged that "it was not the doctors' acts, but their omissions, that constituted deliberate

indifference to his medical needs." *Id.* at *13).

Here, Plaintiff has failed to allege "deliberate indifference" by Dr. Agriantonis to

Plaintiff's medical needs, and therefore Plaintiff's § 1983 claim against Dr. Agriantonis is

DISMISSED.

**B.     Plaintiff's Deliberate Indifference Claim Does Not Allege
Sufficiently Serious Medical Needs**

Dr. Agriantonis argues that Plaintiff fails to allege "that at discharge his condition was

'life-threatening' or 'fast-degenerating' and offers no facts from which a reasonable inference of

same could be drawn." (Def. Memo. of Law 5.) The Court agrees. Rather, Plaintiff's

allegations indicate that any claims of resulting injuries run to the New York City law enforcement officers, not Dr. Agriantonis.

Plaintiff alleges that he received surgery at Elmhurst Hospital after sustaining a gunshot wound by the defendant police officers. (Second Am. Compl. ¶¶ 1-3.) He further alleges that after his release from Elmhurst Hospital on January 25, 2012, the 110 Precinct deprived him of his "medications for over twelve hours," and as result, he "had to be returned to Elmhurst" with "severe abdominal and back pain." (Second Am. Compl. § III., ¶ 9.) He was then returned to police custody. (*Id.*) Subsequently, on January 27, 2012, he "was admitted to Jamaica hospital with complications deriving from the deliberate outrageous conditions under which he was held while in [police custody] since his release from the hospital." (*Id.* at ¶ 10.) Thus, to the extent that Plaintiff alleges the third criteria of a § 1983 claim, that Defendants' "acts were the proximate cause of [his] injuries," his deliberate indifference claim does not lie with Dr. Agriantonis but rather with the New York City law enforcement officials who allegedly shot him and/or did not give him the prescribed medications. Even if there were allegations of injuries attributable to Dr. Agriantonis, they would fail to meet the "sufficiently serious" prong of a deliberate indifference claim.

As Defendant noted, Plaintiff's medical needs at the time that Dr. Agriantonis discharged him from Elmhurst Hospital are not alleged to be life-threatening or urgent. *Hathaway*, 37 F.3d at 66. As for the alleged "complications" that arose in police custody after he was released from Elmhurst, Plaintiff's Opposition Affidavit describes them as "abcess, constipation post intestinal surgery, nausea, abdominal distention, and the pain on my lower back and my abdominal area was horrible and constant." (Pl. Opp. Aff. ¶ 16.) These "complications" do not allege life-threatening or degenerative injuries" to suffice as constitutional violations.

Here, where Plaintiff has failed to allege that Dr. Agriantonis was deliberately indifferent to a sufficiently serious medical need, Plaintiff's § 1983 claim against Dr. Agriantonis is DISMISSED.

**C.    The Court Need Not Address Dr. Agriantonis's Arguments Regarding State Law Claims Where Plaintiff Has Not Alleged Any Such Claims**

Plaintiff has not alleged any state law claims in this case against any of the defendants. Accordingly, the Court need not address Dr. Agriantonis's arguments that this Court should not exercise jurisdiction over pendant state law claims and that a claim for negligence would be time-barred. (Def. Memo. of Law 8-9.)

## CONCLUSION

For the reasons set forth above, Defendant Dr. Agriantonis's motion to dismiss is GRANTED. Plaintiff's § 1983 claim as to Dr. Agriantonis is DISMISSED. This Memorandum and Order resolves ECF Numbers 66, 67, and 71.

**SO ORDERED.**

/s/ Sandra L. Townes
/ SANDRA L. TOWNES )
United States District Judge

Dated: October 26 , 2016
Brooklyn, New York